UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AVELINO CORTINA III, | Civil No. 10cv2423-L(RBB) |
| Petitioner, | **ORDER DENYING PETITION TO VACATE AND GRANTING CROSS-PETITION TO CONFIRM ARBITRATION AWARD** |
| v. | |
| CITIGROUP GLOBAL MARKETS, INC., | |
| Respondent; | |
| AND RELATED CROSS-PETITION. | |

The parties arbitrated their disputes before the Financial Industry Regulatory Authority ("FINRA") which rendered an award in favor of Respondent on its claim to enforce a promissory note and against Petitioner on his counterclaim for discrimination and harassment under California Fair Employment and Housing Act, California Government Code Section 12900 *et seq*. ("FEHA"), and other claims. Petitioner filed in state court a petition to vacate the arbitration award. Respondent removed the petition to this court based on diversity and filed a cross-petition to confirm it. For the reasons which follow, Petitioner's petition to vacate is **DENIED** and Respondent's cross-petition to confirm the award is **GRANTED**.

The parties appear to disagree whether the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA"), or California Code of Civil Procedure Sections 1280 *et seq*. ("CAA") apply in this case. "The CAA and the FAA provide different grounds for vacatur of an arbitration award."

*Johnson v. Gruma Corp.*, 614 F.3d 1062, 1065 (9th Cir. 2010). "[T]here is a strong default presumption that the [FAA], not state law, supplies the rules for arbitration." *New Regency Productions, Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1104 (9th Cir. 2007) (internal quotation marks and citation omitted).

The FAA "is based upon and confined to the incontestable federal foundations of control over interstate commerce . . ." *Allied-Bruce Terminix Companies v. Dobson*, 513 U.S. 265, 271 (1995). The term "involving commerce" in section 2 of the FAA, its "coverage provision," *New Regency Productions*, 501 F.3d at 1104, is interpreted to "signal the broadest permissible exercise of Congress' Commerce Clause power." *The Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). "Because the statute provides for enforcement of arbitration agreements within the full reach of the Commerce Clause, it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce' – that is 'within the flow of interstate commerce.'" *Id.* (internal quotation marks and citations omitted). The application of the FAA is not defeated where the individual transaction at issue, taken alone, does not have a "substantial effect on interstate commerce:"

> Congress' Commerce clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control. Only that general practice need bear on interstate commerce in a substantial way.

*Id.* at 56-57 (internal quotation marks, ellipsis and citations omitted).

The transaction at issue in the underlying dispute was a promissory note between Petitioner and Respondent's predecessor Salomon Smith Barney Holdings, Inc. The promissory note was related to a signing bonus Petitioner received at the beginning of his employment as a financial advisor pursuant to a Special Compensation Agreement.[1] (Lansverk Decl. Exh. A.) The promissory note and the related agreement contain identical arbitration clauses, which provide that disputes would be "submitted to and settled by arbitration pursuant to the

---

[1] The bonus vested over seven years; however, it appears that Petitioner was paid the entire amount upfront and was obligated to repay any unvested amount if he left employment before the end of seven years. Petitioner resigned after six years.

constitution, by-laws, rules and regulations . . . of the New York Stock Exchange, Inc. or the National Association of Securities Dealers, Inc." There is no question the financial industry bears on interstate commerce in a substantial way. Accordingly, the agreements in this case "evidenc[e] a transaction involving commerce" that comes withing the purview of the FAA.

> The FAA, while it does not itself create independent federal jurisdiction, creates a body of federal substantive law establishing and regulating arbitration agreements that come within the FAA's purview. When an agreement falls within the purview of the FAA, there is a strong default presumption that the FAA, not state law, supplies the rules for arbitration. To overcome that presumption, parties to an arbitration agreement must evidence a "clear intent" to incorporate state law rules for arbitration.

*Johnson*, 614 F.3d at 1066 (internal quotation marks, ellipsis and citations omitted).

The parties' agreements have a choice of law provision electing to proceed under New York, not California, law. Either way, "[a] general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the rules for arbitration." *Johnson*, 614 F.3d at 1066 (internal quotation marks and citations omitted). However, an arbitration clause requiring the arbitration to be "conducted and subject to enforcement pursuant to the provisions of California Code of Civil Procedure section 1280 though 1295, or other applicable law," was held to evidence "clear intent" that the CAA rather than the FAA apply to the arbitration. *Id*. at 1067. No such explicit provision was included in the parties' arbitration clause. With respect to his counterclaim, Petitioner executed the Uniform Submission Agreement, agreeing to arbitrate it under FINRA's "Constitution, By-Laws, Rules, Regulations and/or *Code of Arbitration Procedure*." (Lansverk Decl. Exh. C (emphasis in original).) No clear intent to apply the CAA is therefore evident in this case. The FAA rather than the CAA applies to the arbitration.

When an arbitration is governed by the FAA, the FAA provides "a substantive rule applicable in state as well as federal courts." *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984). The FAA applies to pre-dispute arbitration agreements as well as agreements made after the dispute has arisen. *New Regency Production*, 501 F.3d at 1104. Furthermore, "where the FAA rules control arbitration proceedings, a reviewing court must also apply the FAA standard for vacatur." *Johnson*, 614 F.3d at 1067.

Under the FAA, an arbitration award is presumed final and valid "unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11" of the FAA. 9 U.S.C. § 9; *Hall Street Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 582, 587 (2008). The scope of judicial review of arbitration award is extremely limited. *Schoenduve Corp. v. Lucent Tech., Inc.*, 442 F.3d 727, 735 (9th Cir. 2006). "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute, which is unambiguous in this regard." *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009). Petitioners seeking to vacate an arbitration award under the FAA "must clear a high hurdle." *Stolt-Nielsen S.A. v. AnimalfeedsInt'l Corp.*, __ U.S. __; 130 S.Ct. 1758, 1767 (2010).

Under the FAA, and arbitration award may be vacated

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

Petitioner first argues that the award should be vacated because the arbitration panel did not provide a reasoned decision. This argument is based on the fact that his counterclaim contained a statutory employment discrimination claim. Generally "arbitrators are not required to state the reasons for their decisions." *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992). Furthermore, under the FAA, "by agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (internal quotation marks and citation omitted) (arbitration of ADEA claim pursuant to arbitration clause in securities registration application). Petitioner has not articulated any argument or cited any legal authority for the proposition that a requirement of

a reasoned arbitration decision is a "substantive right afforded by [FEHA]." Petitioner's request to vacate the award for lack of a reasoned decision is therefore denied.

Petitioner relies on *Armendariz v. Foundation Health Psychcare Serv., Inc.*, 24 Cal.4th 83 (2000), and *Pearson Dental Supplies, Inc. v. Super. Ct. (Turcios)*, 48 Cal.4th 665 (2010), which respectively addressed the validity of mandatory arbitration of statutory employment claims and the appropriate scope of judicial review of arbitration awards arising therefrom. Neither case applied the FAA, and therefore does not appear to be binding.

Assuming *arguendo* that *Armendariz* and *Pearson Dental Supply* are binding authority, they do not apply to Petitioner's case because they are expressly limited to arbitration agreements which require employment claims, including statutory employment claims, to be arbitrated. *See Armendariz*, 24 Cal.4th at 103 n.8 (requirements apply to "the particular context of mandatory employment arbitration agreements"); *Pearson Dental Supply*, 48 Cal.4th at 669 ("scope of judicial review . . . in the case of a mandatory employment arbitration agreement"); 679 ("proper standard of judicial review of arbitration awards arising from mandatory arbitration employment agreements"). Furthermore, they do not apply to arbitration agreements entered into after the dispute between the parties has arisen. *Armendariz*, 24 Cal.4th at 103 n.8 ("These requirements would generally not apply in situations in which an employer and an employee knowingly and voluntarily enter into an arbitration agreement after a dispute has arisen.").

Petitioner does not contend that arbitration of his FEHA claim was mandatory under a pre-dispute arbitration agreement. Instead, rather than filing an action in court, Petitioner asserted his FEHA claim as a counterclaim in the arbitration of Respondent's promissory note claim. (*See* Lansverk Decl. Exh. D.) Concurrently he signed the Uniform Submission Agreement, agreeing to submit to arbitration of Respondent's claim and his counterclaim pursuant to FINRA's arbitration rules. (*Id*. Exh. C.) He affirmed he had read FINRA's procedures and rules applicable to the arbitration. (*Id*.) FINRA's rules expressly provided that statutory employment discrimination claims were not required to be arbitrated, but could be arbitrated only if the parties agreed. (*Id*. Exh. L (FINRA, Code of Arbitration Procedure for Industry Disputes, Rule 13201).)

Accordingly, the arbitration of Petitioner's FEHA claim was not pursuant to a mandatory employment arbitration agreement, but pursuant to a voluntary agreement reached after the dispute between the parties had arisen. The requirements for mandatory arbitration of statutory employment claims discussed in *Armendariz* and *Pearson Dental Supply* do not apply in this context.

Even if they applied, the arbitration award in this case was in compliance. The pertinent requirement under *Armendariz* and *Pearson Dental Supply* for arbitration of statutory employment claims is that the arbitrator "issue a written arbitration decision that will reveal, however briefly, the essential findings and conclusions on which the award is based." *Armendariz*, 24 Cal.4th at 107; *Pearson Dental Supplies*, 48 Cal.4th at 677-78; *see also id*. at 679-80. In Petitioner's case the arbitration panel issued a written award stating in pertinent part:

> After considering the pleadings, the testimony and evidence presented at the hearing, the Panel has decided in full and final resolution of the issues submitted for determination as follows:
>
> 1. Respondent[2] Cortina is liable for and shall pay to Claimant CGMI compensatory damages in the amount of $65,133.71.
>
> 2. Respondent Cortina is liable for and shall pay Claimant CGMI interest at the rate of 9.25% per annum accruing from August 29, 2008 to September 21, 2010 in the amount of $12,429.00.
>
> 3. Respondent Cortina is liable for and shall pay Claimant CGMI $20,000.00 in attorney's fees pursuant to the terms of the Note and New York Law. Attorney's fees are attributable to the collection of the balance due on the Note, not the defense of counterclaim.
>
> 4. All claims with respect to Respondent Cortina's Counterclaim are denied. The Panel determined that the evidence presented did not support Respondent Cortina's claims of discrimination, harassment, libel, defamation, unfairness, failure to supervise and breach of contract.
>
> 5. Any and all relief not specifically addressed herein, including punitive damages, is denied.

(Lansverk Decl. Exh. G.) The award complies with the requirement articulated in *Armendariz* and *Pearson Dental Supply* because it states that Petitioner's FEHA and other claims were denied because they were not supported by the evidence.

---

[2] Petitioner was the respondent in the arbitration proceeding.

1    Petitioner next argues that the award should be vacated because the panel denied his
2 request for a continuance after he was not able to obtain all the requested discovery from
3 Respondent.  An award can be vacated under FAA Section 10(3) if the arbitrator refuses to grant
4 a postponement where a party provides a "sufficient cause" for delay.  The award is generally
5 upheld if there was "any reasonable basis" for denying the requested continuance.  *Scott v.*
6 *Prudential Sec., Inc.*, 141 F.3d 1007, 1016 (11th Cir. 1998).

7    Petitioner, who represented himself at the arbitration hearing, was granted continuances
8 in furtherance of his discovery efforts.  The scheduling order issued after the pre-hearing
9 conference set November 30, 2009 as the discovery cut-off date, January 5, 2010 as the due date
10 for discovery responses, and March 16, 2010 for the first day of the arbitration hearing.
11 (Lansverk Decl. Exh. E.)  After the discovery cut-off, Petitioner requested a continuance because
12 he was concerned that Respondent may not produce requested discovery sufficiently before the
13 beginning of the hearing.  (*Id*. Exh. Y.)  The panel issued a new scheduling order, continuing the
14 first day of the hearing to July 27, 2010 and the discovery response due date to March 23, 2010.
15 (*Id*. Exh. V.)  The parties subsequently cross-moved to compel.  The panel's chairman James
16 Knotter issued an order granting Petitioner's motion in part.  (*Id*. Exh. F.)  Petitioner also
17 requested, and received from the panel, subpoenas for eleven witnesses.  (*Id*. at 4.)  On July 6,
18 2010 Petitioner filed his second motion to compel and request for a continuance because
19 Respondent had not yet produced all the requested documents, and the due date for pre-hearing
20 briefs and witness lists was the following day.  (Cortina Decl. Exh. G.)  The motion was heard
21 on July 27, 2010, the first day of the arbitration hearing, and was denied.  (*Id*. at 2-3; *see also*
22 Lansverk Decl. Exh. G.)  At the same time, the panel denied Respondent's motion to strike
23 Petitioner's pre-hearing brief and granted Petitioner's motions for private note-taking and private
24 recording of the hearing.  (Lansverk Exh. G.)  At the conclusion of the hearing on July 30, 2010
25 Petitioner requested additional hearing sessions at a later time to call additional witnesses, which
26 requests were granted, and the panel executed subpoenas for four additional witnesses.  (*See id*.)
27 An additional session of the hearing was held on September 21, 2010 to accommodate these
28 requests.  (Lansverk Decl. at 4.)

Nevertheless, Petitioner claims that he was literally railroaded through [his] closing, cut off throughout and cut off at the end. [¶ He] was railroaded through the entire hearing by an impatient and disinterested Chairman." (Cortina Decl. at 3.)

Petitioner's contention is not supported by the record. Although Petitioner did not receive all of the requested documents from Respondent and was denied one request for a continuance, this is not a case where a party was refused of a fair opportunity to present his case. Petitioner received, in part because of Mr. Knotter's order granting Petitioner's first motion to compel, copious documents from Respondent (*see* Pet's Mem. of P&A at 14 (approximately 1,000 pages of documents)) and was able to subpoena fifteen witnesses. Two of Petitioner's three requests for continuance were granted and an additional hearing day was provided to accommodate his additional witnesses. Petitioner's request to vacate the arbitration award under section 10(3) is therefore denied.

Petitioner next contends that Mr. Knotter was not an expert in employment law and therefore should not have been offered as an arbitrator on his case. Petitioner cited no legal authority in support of his argument that this is ground for vacating an arbitration award. Moreover, after the counterclaim was filed, FINRA provided the parties a list of eight arbitrators as potential "Employment Qualified Chairpersons" for arbitration of a statutory employment discrimination claim. (Lansverk Decl. Exh. T.) Petitioner selected Mr. Knotter from the list. After the composition of the three-member arbitration panel was communicated to the parties and before the hearing, the parties were provided with the arbitrators' disclosures. (Lansverk Decl. Exh. P.) Mr. Knotter's qualifications for statutory employment discrimination cases, which are by no means extensive, are clearly stated therein. (*Id.*) Petitioner did not object to Mr. Knotter's qualifications before the hearing. After the unfavorable award was issued, Petitioner consulted Mr. Knotter's mediation website and decided he was not suitable. (Cortina Decl. at 5 & Exh. I.) Based on the foregoing, Petitioner's request to vacate the arbitration award because Mr. Knotter did not possess sufficient employment law expertise is denied.

Petitioner also argues that Mr. Knotter was biased because he was an active private arbitrator, allegedly had an ongoing relationship with banks such as Respondent and did not

disclose his high-volume bank-oriented arbitration practice. Pursuant to the FAA section 10(2), an arbitration award may be vacated if there was "evident partiality." "The party challenging the arbitration decision has the burden of showing partiality." *Woods v. Saturn Distrib. Corp.*, 78 F.3d 424, 427 (9th Cir. 1996). "Evident partiality has been found in nondisclosure cases and actual bias cases." *Id.*

"In nondisclosure cases, vacatur is appropriate where the arbitrator's failure to disclose information gives the impression of bias in favor of one party." *Woods*, 78 F.3d at 427. Petitioner's non-disclosure claim is contradicted by Mr. Knotter's disclosure report and supplemental disclosure report. (*See* Lansverk Decl. Exh. P & Q.) The initial disclosure included a long list of his publicly available awards from 1992 to 2007. A cursory review of the list makes plain that most of Mr. Knotter's arbitrations involved large banks and other financial institutions, including Smith Barney. Moreover, his supplemental disclosure shows he was serving as an arbitrator in another arbitration involving Respondent. Finally, the disclosure documents show that Mr. Knotter was available as a mediator and arbitrator through a number of organizations and independently. The facts Petitioner discovered after the unfavorable award add nothing to what was disclosed to him prior to the hearing. Because the arbitrator disclosed prior to the hearing the facts Petitioner contends give the impression of bias, his request to vacate the award based on non-disclosure is denied.

In the alternative, Petitioner's request is denied because he waived his right to challenge the arbitration award based on non-disclosure. If a party has actual or constructive knowledge of a potential conflict of interest before an award is issued but fails to object before that time, he has waived his challenge. *Fidelity Fed. Bank, FSB v. Druga Ma Corp.*, 386 F.3d 1306, 1313 (9th Cir. 2004). To the extent Mr. Knotter's disclosures did not provide Petitioner with actual knowledge of bias based on Mr. Knotter's arbitration practice involving banks, including Respondent, the disclosures provided him with constructive knowledge. Accordingly, any challenge to the award based on non-disclosure of Mr. Knotter's bank-heavy practice has been waived.

/ / / / /

Petitioner further argues that the award should be vacated because Mr. Knotter was allegedly racially biased. In actual bias cases, "the integrity of the arbitrator's decision is directly at issue . . .. The appearance of impropriety, standing alone, is insufficient to establish evident partiality . . . because a reasonable impression of partiality does not necessarily mean that the arbitration award was the product of impropriety. . . . Therefore, the party alleging evident partiality in actual bias cases must establish specific facts which indicate improper motives." *Woods*, 78 F.3d at 427 (internal quotation marks, brackets and citations omitted).

Petitioner's theory of Respondent's FEHA violation was that Petitioner was born in Mexico and that his supervisor and co-workers harassed him because of his heritage and subjected him to other forms of discrimination. His claim that Mr. Knotter was biased is based on the following exchange at the hearing when Petitioner was questioning a witness about a particular incident:

> Q.        Let's go back to the . . . event when Charlie came into my office and farted. Do you remember him saying, "I thought you would like the smell, beaner boy?"
>
> Chairman:   You know, I stopped this conversation once before, and I am going to stop it now. It's – move on to something else. It's pretty immaterial, and –
>
> Mr. Cortina: It's . . . a discriminating term to describe a Mexican.
>
> Chairman:   News to me.

(Cortina Opp'n Exh. A.)

At most, this excerpt shows Mr. Knotter's unfamiliarity with one particular racial slur. It does not support Petitioner's argument that Mr. Knotter was racially biased and therefore acted with an improper motive or that the award was the product of impropriety. To the contrary, the award with respect to Petitioner's counterclaim appears to be the product of his witnesses denying that certain incidents occurred. For example, the witness in the foregoing exchange denied that he heard the "beaner boy" slur and denied that Petitioner was harassed. (Cortina Opp'n Exh. A.) Same was the case with two other witnesses whose excerpts Petitioner submitted. (*Id*. Exh. B & C.) Accordingly, Petitioner's request to vacate the award based on actual bias is denied.

Finally, Petitioner maintains that the award should be vacated based on clear errors of law pertaining to Respondent's standing to enforce the promissory note and Petitioner's burden of proof on his FEHA claim. The FAA does not provide for vacatur of arbitration awards based on a clear error of law, *see* 9 U.S.C. § 10, and neither erroneous legal conclusions nor unsubstantiated factual findings justify it, *Bosack*, 586 F.3d at 1102.

"Section 10(4) of the FAA provides that a court may vacate an award where the arbitrators exceeded their powers." *Bosack*, 586 F.3d at 1104. To obtain relief under this provision, it is not enough for Petitioner to "show that the panel committed an error – or even a serious error." *Stolt-Nielsen S.A.*, 130 S.Ct. at 1767. "Arbitrators exceed their powers when they express a 'manifest disregard of law,' or when they issue an award that is 'completely irrational.'" *Bosack*, 586 F.3d at 1104; *but see Hall Street Assoc.*, 552 U.S. at 584-85 (suggesting manifest disregard of law may not be independent ground for vacatur and holding 9 U.S.C. § 10 grounds to be exclusive). "Manifest disregard requires something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand and apply the law." *Bosack*, 586 F.3d at 1104 (internal quotation marks ellipsis and citation omitted). The "moving party must show that the arbitrator understood and correctly stated the law, but proceeded to disregard the same. There must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." *Id*. (internal quotation marks, brackets, ellipses and citations omitted.) Petitioner does not contend that the award was in manifest disregard of the law or was completely irrational. His argument is essentially an invitation to review the panel's factual findings and legal conclusions. The court is "prohibited from doing so." *Id*. at 1104. Accordingly, Petitioner's request to vacate the award based on clear error of law is denied.

/ / / / /
/ / / / /
/ / / / /
/ / / / /
/ / / / /

Based on the foregoing, Petitioner's petition to vacate the arbitration award is **DENIED**. There being no ground to vacate or modify the award under the FAA Sections 10 or 11, Respondent's cross-petition to confirm the award is **GRANTED**.

**IT IS SO ORDERED**.

DATED: August 19, 2011

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. RUBEN B. BROOKS
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL